**COREGIS INSURANCE COMPANY,**
F/K/A Mt. Airy Insurance
Company

v.

**Roland Scott LYFORD and
Mills, Shirley, Eckel &
Bassett, L.L.P.**

Civil Action No. G–98–103.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 28, 1998.

William Cornelius, Wilson Sheehy Knowles Robertson & Cornelius, Tyler, Jeffrey A. Goldwater, Bollinger Ruberry & Garvey, Chicago, IL, Monica Fitzgerald Oathout, Schwartz Junell Campbell and Oathout, Houston, for Coregis Ins. Co.

James Richard Watkins, Royston Rayzor et al., Galveston, TX, Carl R. Roth, Marshall, TX, Alton C. Todd, Alvin, TX, Walter Thomas Henson, Tyler, TX, for Roland Scott Lyford, Mills, Shirley, Eckel & Bassett, LLP.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Defendants Roland Scott Lyford and Mills, Shirley face a civil lawsuit over the actions of Defendant Lyford. Their insurer, Plaintiff Coregis Insurance Company, alleges that it owes defense and indemnity coverage to neither Defendant under an exclusion to the "claims-made" professional liability insurance policy issued to Defendant Mills Shirley in 1994. Plaintiff filed this action seeking a declaratory judgment to that effect. Now before the Court are cross-motions for summary judgment from Plaintiff, Defendant Lyford, and Defendant Mills, Shirley. For the reasons that follow, Plaintiff's Motion is **GRANTED**, and Defendants' Motions are each **DENIED**.

### I. FACTUAL HISTORY

In October 1993, Defendant Roland Scott Lyford accepted an appointment to serve as a special prosecutor in Upshur County, Texas. Approximately two months prior to accepting that position, he had begun employment as an associate with Defendant Mills, Shirley, a position he still held at the time of this lawsuit. Defendant Lyford's tenure as special prosecutor for Upshur County concluded in March 1994.

In early 1994, Defendant Mills, Shirley purchased a professional liability insurance policy from Plaintiff covering the period of May 29, 1994 to May 29, 1995. Under this "claims-made" policy, Plaintiff would indemnify and provide coverage for any professional liability claim made against Defendant Mills, Shirley or any of its partners or associates during this period. This coverage was subject to one exception: Under "Exclusion B" of the policy, Plaintiff would provide no coverage for any claims based on acts "occurring prior to the effective date of this policy if *any* Insured at the effective date *knew or could have reasonably foreseen* that [such

acts] might be expected to be the basis of a claim or suit." (emphasis added). During the application period for the policy, the office manager for Defendant Mills, Shirley circulated a form to each of the firm's partners and associates inquiring about any potential claims. Ultimately, Defendant Mills, Shirley certified that it knew of no potential claims.

In June 1994, however, Defendant Lyford testified before an Upshur County grand jury regarding his role as special prosecutor. In his testimony, Lyford described a conversation he had held with an attorney in the Attorney General's office on March 11, 1994 in which he stated that he expected to be sued for his actions in a case he had prosecuted. Within a few weeks of his testimony, Lyford was in fact named defendant in the first of two federal lawsuits alleging, among other claims, malicious prosecution, false arrest and imprisonment, and gross negligence.[1] Defendant Mills, Shirley was also named in the lawsuits on a theory of respondeat superior.

After Plaintiff began defending the underlying lawsuits, it filed this action seeking a declaratory judgment that it has no duty to indemnify or defend under the policy's exclusion.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere

---

**1.** The first lawsuit against Lyford, filed on July 5, 1994 and styled *James York Brown v. Roland Scott Lyford, et al.*, was joined by a second suit in December, styled *Eugene Kerr and Geneva Kerr v. Roland Scott Lyford, et al.* Both suits allege, among other claims, that Lyford wrongfully prosecuted the plaintiffs, claiming civil rights violations, malicious prosecution, intentional infliction of emotional distress, defamation, negligence, gross negligence, and civil conspiracy.

*existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### III. ANALYSIS

The lone issue before the Court is whether the policy exclusion in the insurance contract executed between Defendant Mills, Shirley and Plaintiff obviates Plaintiff's duty to defend and indemnify either or both of the insureds. Resolution of this issue requires a two-part analysis. First, the Court must determine as a matter of law whether knowledge of an impending lawsuit on the part of Defendant Lyford, an insured under the policy, triggers the policy exclusion with respect to Defendant Mills, Shirley. Second, the Court must determine if a genuine issue of material fact exists as to whether Defendant Lyford, as an insured under the policy, "knew or could have reasonably foreseen" before the effective date of the policy that his actions as special prosecutor for Upshur County would provide the basis for the underlying lawsuits.

### A. Defendant Lyford's Knowledge Triggers the Policy Exclusion with Respect to Defendant Mills, Shirley

 Before the Court turns its attention to the question of whether Defendant Lyford

"knew or could have reasonably foreseen" that his conduct might spur litigation, it must determine, as a matter of law, whether such knowledge on his part would trigger the policy exclusion with respect to Defendant Mills, Shirley. The resolution of this question will either bind the summary judgment fortunes of Defendant Mills, Shirley to those of Defendant Lyford or uncouple them for all purposes of this declaratory judgment action.

Under Texas law, an insurance policy is a contract that should be governed by the same rules that govern general contract interpretation. *See American States Ins. Co. v. Bailey,* 133 F.3d 363, 369 (5th Cir.1998).[2] The interpretation of a contract is a matter of law to be undertaken by the Court. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). Where the contract is unambiguous, its terms control its meaning. *See National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. CBI Industries, Inc.,* 907 S.W.2d 517, 520 (Tex. 1995). Where an insurance contract is susceptible to more than one reasonable interpretation, however, the Court must adopt the construction most favorable to the insured. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 700 (Tex.1993). Ambiguities relating to policy exclusions, in particular, must be strictly construed against the insurer. *Aetna Cas. & Sur. Co. v. Metropolitan Baptist Church,* 967 F.Supp. 217, 222–23 (S.D.Tex.1996).

It is against that backdrop that the Court must determine whether the policy's "Exclusion B" represents a clear expression of the parties' intent or an ambiguity that cannot be resolved by simple resort to the language in the contract. The exclusion states in relevant part:

> This Policy does not apply to ... any claim arising out of any act, error, omission or personal injury occurring prior to the effective date of this policy if any Insured at the effective date knew or could have reasonably foreseen that such act,

---

**2.** Although the insurance policy at issue does not include a choice of law provision, an insurance contract executed between a resident of Texas

and an insurance company doing business in Texas is governed by Texas Law. *See* Tex. Ins. Code Ann. Art. 21.42 (Vernon Supp.1970).

error, omission or personal injury might be expected to be the basis of a claim or suit. Plaintiff argues that the language "any Insured" clearly indicates that Defendant Lyford's knowledge that he probably would be sued triggers the policy exclusion with respect to Defendant Mills, Shirley.[3] Defendant Mills, Shirley, on the other hand, argues that it is unclear whether its interests and obligations under the policy are joint and several and that this ambiguity should be resolved in its favor.

■ Plaintiff appears to have the better of this dispute. Neither Plaintiff nor Defendant Mills, Shirley has pointed the Court's attention to any Texas caselaw that would control the issue, and the Court's own efforts have uncovered no such precedent. Nonetheless, the weight of precedent from other courts supports the position that policy exclusions concerning the acts of "an" or "any" insured, as opposed to exclusions concerning acts of "the" insured, operate to bar coverage for all insured when one insured commits such an act. *See, e.g., All American Ins. Co. v. Burns*, 971 F.2d 438, 445 (10th Cir.1992) (applying Oklahoma law); *Sales v. State Farm Fire & Casualty Co.*, 849 F.2d 1383, 1385 (11th Cir.1988) (applying Georgia law); *Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139, 1141–42 (3d Cir.1985) (applying Pennsylvania law); *McCauley Enterprises v. New Hampshire Ins. Co.*, 716 F.Supp. 718, 721 (D.Conn.1989) (interpreting Connecticut law); *State Farm Fire & Casualty Co. v. Davis*, 612 So.2d 458, 466 (Ala.1993); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 752 (Colo.1990); *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 754 (Mich.1989); *McAllister v. Millville Mut. Ins. Co.*, 433 Pa.Super. 330, 640 A.2d 1283, 1289 (Pa.Super.Ct.1994). These courts have consistently held that, unlike the language "the insured," the language "any" or "an" insured "unambiguously expresses a contractual intent to create joint obligations and to

prohibit recovery by an innocent coinsured." *Sales v. State Farm*, 849 F.2d at 1385.

Defendant Mills, Shirley offers two arguments in support of its proposed interpretation of the policy exclusion. First, Defendant Mills, Shirley argues that despite the policy's use of "any" rather than "the", it actually creates interests and obligations on the part of the insureds that are several rather than joint. Second, Mills, Shirley argues that under Texas partnership law, the knowledge of a non-partner employee, such as Defendant Lyford, cannot be imputed to the partnership. Each of these arguments is inapposite.

■ To support its argument that the policy is several rather than joint, Defendant Mills, Shirley suggests that the policy contains a sort of "implied" severability of interests clause. A typical severability of interests clause expressly states that the insurance policy applies "separately" or "severally", rather than collectively, to each insured. *See, e.g., Chacon*, 788 P.2d at 750; *Commercial Standard Ins. Co. v. American General Ins. Co.*, 455 S.W.2d 714, 718 (Tex. 1970). Where a policy contains both an exclusion employing the language "any" or "an" insured and a severability of interests clause, several courts have held that the resulting ambiguity requires an interpretation favoring the insured, that is, an interpretation that the policy is several rather than joint. *See, e.g., Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 462 (Kan.1992); *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496 N.E.2d 158, 161 (Mass.1986) (both holding that the ambiguity created by the inclusion of a severability clause required a narrow construction of the exclusion); *but see Chacon*, 788 P.2d at 752 (holding that the language "any insured" clearly created a joint policy notwithstanding the existence of a severability clause). Here, however, the policy contains no severability clause. The most compelling evidence Defendant Mills, Shirley offers in sup-

---

**3.** The policy names Defendant Mills, Shirley as the Named Insured. In addition to Defendant Mills, Shirley, the "Insured" as defined by the policy include "any lawyer ... who was or is a partner, officer, director or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named In- sured or any predecessor firm thereof." All parties appear to agree that Defendant Lyford was a lawyer employee of the firm at all relevant times and thus an insured, despite the fact that he was working for Upshur County at the time of the incidents that form the basis of the underlying lawsuits.

port of its argument is a question on the policy application asking if any of the proposed insureds are "aware of any circumstance, act, error, omission ... which may result in a claim *against them*." (emphasis added). However, the language employed in this application question is irrelevant. The question is not part of the contract. The Court may not read an ambiguity into an otherwise unambiguous contract by looking outside the document, as Defendant Mills, Shirley would have it do. *See National Union Fire Ins. Co.*, 907 S.W.2d at 520 (refusing to consider parol evidence where a contract is unambiguous).

Defendant Mills, Shirley's second argument fares little better. It argues that Defendant Lyford's knowledge of a potential claim cannot be imputed to it. Insofar as Texas law would not allow the Court to impute the knowledge possessed by Lyford, a non-partner employee of Mills, Shirley, a limited liability partnership, to the partnership, Mills, Shirley is correct. The Texas Revised Partnership Act limits the knowledge of a partnership to the actual knowledge of its partners. *See* Tex.Rev.Civ. Stat. Ann. Art. 6132b–1.02 (Vernon Supp.1998). However, the policy exclusion at issue here does not concern itself with imputed knowledge; actual knowledge of an impending claim on the part of "any" insured is what triggers the policy exclusion with respect to all insureds. As neither side in this dispute has argued that Defendant Lyford is not an insured under the policy, any actual knowledge on his part triggers the exclusion.

The Court thus holds as a matter of law that knowledge of an impending claim on the part of Defendant Lyford obviates Plaintiff's duty to indemnify and defend Defendant Mills, Shirley under the policy exclusion. Now the task facing the Court shifts to an examination of the summary judgment evidence concerning Defendant Lyford's knowledge.

### B. Defendant Lyford Had Knowledge of the Impending Lawsuits

■ Under the plain language of the insurance contract, the policy exclusion voids Plaintiff's obligation to defend or indemnify acts committed by "any Insured" who on or before the policy's effective date "knew or could have reasonably foreseen" that he might be subject to suit. The key issue, then, is Defendant Lyford's knowledge.

Plaintiff has introduced evidence that Defendant Lyford knew he would be sued for his actions as special prosecutor. Specifically, Plaintiff offers a portion of Lyford's sworn testimony before an Upshur County grand jury that concerned the possibility of a lawsuit against him. In his testimony, Lyford spoke of a conversation he had with an Assistant Attorney General regarding the prosecutions that formed the basis for the lawsuits underlying the litigation before this Court. Lyford testified that the Assistant Attorney General informed him that the Attorney General's office had decided to dismiss the case Lyford had been prosecuting in Upshur County. As their conversation wrapped up, Lyford testified that they discussed the probability of a lawsuit over his actions as special prosecutor: "And Shane [Phelps, the Assistant Attorney General] told me the day we were in Austin on [March 11, 1994], he said 'You know you are going to get sued on this.' I said 'I know. That's to be expected.' ..."

■ Defendant Lyford offers little evidence in response. Instead, he argues that the grand jury testimony indicates at most that he was aware of the possibility that he might be sued, not that he was aware of a specific act that might form the basis of a suit. Moreover, he argues, the testimony said nothing about what precise legal claims he anticipated facing. The first of these arguments strains credulity. The context of the discussions between Lyford and the Assistant Attorney General makes it difficult for the Court to believe that Lyford's comments were related to anything other than his actions as special prosecutor in the cases for which he was ultimately sued. As to the second argument, the possibility that the plaintiff in the underlying suit might assert different claims than those Lyford appears to have anticipated is irrelevant. In policy exclusion cases, the nature of the injury, rather than the "nomenclature" of the underlying claim, is the relevant issue. *See Freeman*, 443 N.W.2d at 734.

In short, Defendant Lyford has produced no evidence that would withstand summary

judgment. Because there is no genuine issue of material fact on the question of Lyford's knowledge, summary judgment in favor of Plaintiff is appropriate. Further, because Lyford's knowledge triggers the policy exclusion with respect to Defendant Mills, Shirley as well, summary judgment against Mills, Shirley is appropriate. Plaintiff owes neither Lyford nor Mills, Shirley the duty to defend or indemnify. Accordingly, Plaintiff's motion for summary judgment against Defendant Lyford is hereby **GRANTED.** Likewise, Plaintiff's motion for summary judgment against Defendant Mills Shirley is also **GRANTED.** For the same reasons, the cross-motions of each Defendant for summary judgment are **DENIED.**

### IV. CONCLUSION

The Court finds that the language "any Insured" requires the conclusion that knowledge of a potential claim on the part of Defendant Roland Scott Lyford triggers the policy exclusion with respect to Defendant Mills, Shirley. Further, the Court finds that there is no issue of material fact regarding Defendant Lyford's knowledge of such a claim. Therefore, summary judgment is appropriate. The Court accordingly holds that Plaintiff owes obligations of defense or indemnity to neither Defendant Lyford nor Defendant Mills, Shirley. Plaintiff's Motion for Summary Judgment is **GRANTED** with respect to both Defendants Lyford and Mills, Shirley.

The parties are **ORDERED** to bear their own taxable costs and expenses occurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a *compelling* showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**