**USAA CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Ruth M. MUMMERT, et al., Defendants.**

**No. CIV. S 02–CV–547.**

United States District Court,
D. Maryland.

Aug. 2, 2002.

Andrew Janquitto, Law Office, Towson, MD, for USAA Casualty Insurance Company, plaintiff.

Susan Elizabeth Mays, Law Office of Susan E Mays, Bowie, MD, for Ruth M. Mummert, Robert H. Law, P.A., Robert H. Law, defendants.

### MEMORANDUM OPINION

SMALKIN, Chief Judge.

This case is before the Court because plaintiff, USAA Casualty Insurance Company (USAA), seeks a declaration that it does not have to defend or indemnify defendant Ruth Mummert (Mummert) for the claims brought against her by Defen-

dants Robert H. Law (Law) and Robert H. Law, P.A. (RHL). Mummert has failed to answer USAA's complaint, and a default has been entered against her. Defendants Law and RHL have answered.

USAA has moved this Court, pursuant to Fed.R.Civ.P. 56, for summary judgment, i.e., to find that there is no genuine issue of material fact and that the plaintiff is entitled to prevail, as a matter of law.

## I. *Jurisdiction*

Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332(a)(2). There is diversity of citizenship, and the amount in controversy exceeds $75,000.

Venue is proper under 28 U.S.C. § 1391.

## II. *Background*

Mummert worked for RHL and/or Law from January 1994 to June 1998. Her job included overseeing the books and finances of RHL. In June 1998, Law noticed financial irregularities in the funds and records over which Mummert had control. Law reported the financial irregularities to the police, and criminal charges were brought against Mummert for theft.

USAA is an insurance company which insured Mummert under a series of homeowner's policies beginning on January 10, 1994, and continuing (in yearly renewals) to January 10, 1999. Each of the homeowner's policies contained the same coverage form, known as HO–9R. HO–9R provided for liability coverage when "a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence." The HO–9R coverage defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. bodily injury; or b. property damage."

In May 1999, Law and RHL sued Mummert for trover and conversion in the Circuit Court for Anne Arundel County (the underlying action). In June 1999, Law and RHL amended their complaint, adding allegations of intentional misrepresentation by concealment and breach of fiduciary duty. In May 2001, Law and RHL amended their complaint again, adding allegations of grossly negligent trover and conversion, negligent trover and conversion, grossly negligent misrepresentation, negligent misrepresentation, breach of fiduciary duty by gross negligence, and breach of fiduciary duty (presumably by negligence). Each of the "negligent" or "grossly negligent" counts incorporated the earlier allegations of intentional conduct. In May 2002, Mummert, Law, and RHL, reached a settlement in the underlying action. A $125,000 consent judgment was entered against Mummert in favor of Law and RHL. USAA has now sued here, seeking summary judgment and a declaration that it is not required to defend or indemnify Mummert. The motion has been opposed, and USAA has filed a reply. No oral argument is needed. Local Rule 105.6 (D.Md.2002).

## III. *The Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn

therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

"Summary judgment is appropriate in a declaratory action, although it is 'the exception rather than the rule.'" *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994) (quoting *Loewenthal v. Sec. Ins. Co.*, 50 Md.App. 112, 117, 436 A.2d 493 (1981) (holding that in an action for declaratory judgment concerning the correct interpretation of an insurance contract, "summary judgment may be warranted where there is no dispute as to the terms of an insurance contract but only as to their meaning")).

## IV. *Discussion*

Under Maryland law, "the obligation of an insurer to defend its insured under a contract provision ... is determined by the allegations in the tort actions." *Am. Home Assurance v. Osbourn*, 47 Md.App. 73, 79, 422 A.2d 8 (1980) (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407, 347 A.2d 842 (1975)). Generally, "[e]ven if a tort plaintiff does not allege facts that clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." *Brohawn*, 276 Md. at 408, 347 A.2d 842 (citations omitted). However, "[w]here the allegations in the tort suit against the insured obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional, ... a declaratory judgment action ... is permissible." *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 253, 572 A.2d 154 (1990).

An insurance company's duty to pay a resulting judgment is separate and distinct from the company's duty to defend. *See, e.g., Steyer v. Westvaco Corp.*, 450 F.Supp. 384, 389 (D.Md.1978); *Riviera Beach Volunteer Fire Co. v. Fid. & Cas. Co. of N.Y.*, 388 F.Supp. 1114, 1120 (D.Md. 1975). Generally, the question of whether a company must indemnify "turns on a comparison of the ultimate findings of fact concerning the alleged occurrence with the policy coverage." *Steyer*, 450 F.Supp. at 389 (citation omitted). However, even if a case settles before its final adjudication, ultimately, a company's duty to pay a judgment "depend[s] on the scope of coverage under the policy." *Id.* The interpretation of a written contract ordinarily is a question of law for the court. *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 341, 731 A.2d 441 (1999). Where the language of the contract is unambiguous, its plain meaning will be given effect. *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982).

USAA clearly has no duty to defend Mummert based on any of the counts in the underlying action. Because the parties in the underlying action have reached a settlement which resolved "all the claims that the Plaintiffs [Law and RHL] have against the Defendant [Mummert]," Mot. for Summ. J., Ex. 12 at 3, the issue of whether USAA must defend Mummert against any claims alleged in the underlying action is now moot. *See, e.g., Bailer v. Erie Ins. Exch.*, 344 Md. 515, 519, 687 A.2d 1375 (1997) (holding that an action for a declaratory judgment or decree may not be used to decide moot questions). Even if it were still a live controversy, the Court would have no hesitation in saying that there is no duty to defend, because the underlying litigation "obviously constitute[s] a patent attempt to recharacterize, as negligent, an act that is clearly inten-

tional...." *Allstate Ins. Co. v. Atwood*, 319 Md. at 253, 572 A.2d 154.

■ Nor does USAA have any duty to indemnify Mummert based on any of the counts in the underlying action. Every claim in the settled underlying action is either an allegation of intentional conduct or a mere recharacterization of intentional conduct as negligent. Such claims clearly fall outside of the scope of the USAA policy covering "occurrences." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This term is unambiguous, and its plain meaning must be given effect. As the Court of Appeals of Maryland concluded in *American Home Assurance Co. v. Osbourn*, 47 Md.App. 73, 81, 422 A.2d 8 (1980), "it cannot seriously be asserted that ... conversion even remotely alleged an accident."

■ Summary judgment requires all reasonable inferences from the facts be given to the party opposing the motion, *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348, but it does not require the Court to draw unreasonable ones. It is entirely unreasonable to infer RHL and Law's settled claims against Mummert involve an "occurrence" or an "accident" under USAA coverage. This Court rejects RHL and Law's bold assertion that there is a triable issue of negligent conduct simply because it was not proved that Mummert took the funds at all. This argument is especially specious in light of the fact that RHL and Law, since 1999, have asserted that Mummert's actions constituted a clear case of intentional, even criminal, conduct. Here, the mere assertion of negligence claims, without even a shred of supporting evidence outside of overwhelming evidence of intentional actions, originally gathered by RHL and Law themselves, will not impose a duty of indemnification upon USAA under Mummert's homeowner's policy.

All of RHL and Law's settled claims of gross negligence and negligence attempted the very same inverse characterization of an intentional activity, a ploy rejected in *Pettit v. Erie*, 349 Md. 777, 781, 709 A.2d 1287 (1998), and, consequently, the claims are not properly subject to indemnification. In *Pettit*, the court rejected the characterization of the same activity as both intentional conduct and negligent failure to refrain from engaging in such conduct and/or negligent failure to warn of such conduct. *Id.* Law and RHL essentially are arguing that Mummert should have warned them about her own unreasonable conduct and that she failed to take reasonable precautions to protect Law and RHL from herself. This tenuous assertion is analogous to B claiming that A caused B harm, not from a punch in the stomach, but rather from negligently failing to warn B that A was going to punch B in the stomach. This Court agrees with the reasoning of the *Pettit* court that such recharacterizations of intentional conduct are outside the pale. The additional counts alleging "grossly negligent" and "negligent" conduct all derive from Mummert's alleged conversion of funds from the RHL checking account by writing unauthorized checks to herself or to third parties to pay for goods for her own personal use. It is entirely unbelievable—and there is nothing in the record to indicate—that Mummert's actions were an "accident" as defined by the USAA contract or that the harm visited upon her employers was unexpected or unintended. *See Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 652, 679 A.2d 540 (1996) (finding that an act of negligence "constitutes an 'accident' under a liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.'" (quoting *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.*, 248 Md. 148, 154, 235 A.2d 556 (1967))).

In *Harpy v. Nationwide Mutual Fire Insurance Co.*, 76 Md.App. 474, 545 A.2d 718 (1988), the Court of Special Appeals rejected a similar attempt to evade summary judgment in a coverage case. Harpy, accused of assault and battery and intentional infliction of emotional distress, swore that he had "never taken any action ... in which [he] intended or expected that [his daughter] would suffer *the type of injuries* that she has alleged in her Complaint against me." *Id.* at 477, 545 A.2d 718. Harpy then contended that his "intent to harm his daughter [was] a disputed material fact relevant to the potentiality of coverage under a negligence claim." *Id.* at 482, 545 A.2d 718. The court rejected this claim as "absurd." *Id.* To assert, as Law and RHL do here, that Mummert did not intend or expect to wrongfully deprive Law of his property by writing some $250,000.00 worth of checks to herself over a period of four years is not only counter to the clear weight of the evidence presented, but as absurd as Harpy's contention.

To recapitulate, the issue of any duty to defend Mummert is now moot, and, even if not moot, must be decided in USAA's favor. The claims asserted in the underlying action and resolved by the consent judgment are not covered by the USAA policies because, as a matter of law, they do not involve an "occurrence," as defined by the contractual insurance policy of USAA. Therefore, USAA owes no duty to indemnify Mummert against any such claims, and this Court, by separate Order, will GRANT the plaintiff's motion for summary judgment.

### JUDGMENT ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is, this 2nd day of August, 2002, by the Court, ORDERED and ADJUDGED:

1. That plaintiff's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That judgment BE, and it hereby IS, entered in favor of the plaintiff, and against the defendant, with costs;

3. That the plaintiff has no duty to cover or to indemnify losses generated by Ruth M. Mummert as to any matter involved in the underlying litigation between Mummert and Robert H. Law and Robert H. Law, PA; and

4. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.